# UNITED STATES DISTRICT COURT
for the
Northern District of California

| | |
|---|---|
| United States of America<br>v.<br>Juan VILLALOBO<br><br>*Defendant(s)* | ) ) ) ) ) ) ) Case No.<br><br>4-11-70427 |

**E-filing**

**FILED**
APR 18 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 1, 2011__ in the county of __Contra Costa__ in the __Northern__ District of __California__, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution of a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine. |

This criminal complaint is based on these facts:
See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Patrick Joseph Ernst, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __4/18/11__

_____
*Judge's signature*

City and state: __Oakland, California__   Hon. Laurel Beeler
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Patrick Joseph Ernst, Special Agent of the Federal Bureau of Investigation, being duly sworn, hereby declare as follows:

## I. INTRODUCTION

1. I am a Special Agent of the Federal Bureau of Investigation (FBI) assigned to the San Francisco Division and have been so employed since August 15, 2010. As a federal agent, I am authorized to investigate violations of the laws of the United States and I am a law enforcement officer with authority to execute warrants issued under the authority of the United States. My FBI Special Agent training consisted of a twenty-one week new agent training class during which I received instruction on various aspects of federal crime. Prior to becoming an FBI Special Agent, I was a Special Agent for the Internal Revenue Service–Criminal Investigation (IRS–CI) for approximately five years. As a Special Agent for IRS–CI, I trained at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia for twenty-four weeks. Training at FLETC consisted of instruction on legal principles and a variety of federal criminal violations, including money laundering, tax evasion, and other tax-related crimes. I have conducted criminal investigations involving investment fraud, money laundering, tax evasion and other financial crimes, as well as violations of the Bank Secrecy Act. I have also participated in the planning and execution of numerous federal search, seizure, and arrest warrants involving the above violations.

2. During the course of this investigation, I have consulted with Special Agent Gregory M. Eckhart. SA Eckhart has been an FBI Special Agent since August 2003. He is currently assigned to the San Francisco Field Division of the FBI, and investigates cases involving gangs, drug trafficking, and violent fugitives. He has received training at the FBI Academy in Quantico, Virginia, including training on violent street gangs, criminal case management, informant development, Title III investigations and the identification, use, packaging and sales of controlled substances. SA Eckhart also attended numerous training schools and seminars related to gangs, violent crime, and narcotics investigations, including many that provided instruction on drug-trafficking methods, money laundering methods, and

techniques for investigating those crimes. SA Eckhart has participated in the execution of numerous state and federal search warrants and arrests involving alleged narcotics trafficking, and he has participated in numerous investigations of narcotics traffickers and violent street gangs. These investigations have involved the use of confidential informants, wire and physical surveillance, telephone toll analysis, investigative interviews and the service of search and arrest warrants.

3. SA Eckhart has interviewed numerous drug dealers, drug users, and knowledgeable confidential informants about the lifestyles, appearances, and habits of drug dealers and users. He is familiar with the manner in which narcotics traffickers smuggle, package, transport, store and distribute narcotics, as well as how they collect and launder drug proceeds. He has had discussions with other law enforcement personnel about the packaging and preparation of narcotics, the distribution methods of illegal narcotics traffickers, and the security measures that narcotics traffickers often employ. SA Eckhart has also examined documentation of various methods by which methamphetamine, cocaine, marijuana, and other illicit drugs are smuggled, transported and distributed. He has participated in surveillance of narcotics traffickers. During surveillance, SA Eckhart has observed narcotics transactions, counter-surveillance techniques, and the ways in which narcotics traffickers conduct clandestine meetings. He has also participated in investigations that involved the interception of wire communications, and he has been directly involved in the review and deciphering of intercepted coded-conversations between narcotics traffickers that were later corroborated by surveillance or by defendants' statements.

4. SA Eckhart is one of the case agents participating in the investigation of Joseph Solice ABBATE, aka Sherman Joseph Fisher, aka "Butch," aka "Mac Dre," aka "Andre Hicks" (ABBATE); Ramon RUBIO, aka "Primo" (RUBIO); and others, for narcotics trafficking and firearms-related offenses.

II. **PURPOSE OF THIS AFFIDAVIT**

5. This affidavit is being submitted in support of a criminal complaint and arrest warrant charging Juan VILLALOBO with distribution of methamphetamine, in violation of 21

U.S.C. §§ 841(a)(1).

6. Because this affidavit is being submitted for the limited purpose of securing a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that, on or about April 1, 2011, VILLALOBO knowingly and intentionally distributed a Schedule II controlled substance, namely, a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

7. In this affidavit I describe wire and electronic communications that have been intercepted pursuant to the interception orders in this investigation. In doing so, I have summarized portions of some, but not all, of the intercepted conversations. My summaries of these conversations are based on my personal review of recordings of the intercepted conversations, my training, experience, and knowledge of this investigation, notes of monitoring personnel and/or reviewers which were taken while the recorded conversations were occurring or at the time the conversations were reviewed, and/or other law enforcement personnel as to the meaning of vague or coded language and certain words and phrases. My summaries of the conversations are overviews and are not intended as verbatim transcripts. Even so, I have included in quotation marks my best attempt to provide a draft transcript of some of the speakers' words during the conversations. In some instances, I have only set forth the pertinent parts of sentences and I have used ellipses in some sentences instead of words or phrases that are unnecessary, profane, or repetitive. Subsequent review of the recorded conversations and the preparation of verbatim transcripts may show changes from the summaries provided herein. In addition, I know, based on my training, experience, and knowledge of this investigation (as well as the training, experience, and knowledge of other Agents with whom I have spoken) that criminal street gang members/associates and narcotics traffickers frequently use slang or coded or intentionally vague language when discussing illegal activity, particularly narcotics trafficking or firearms use and/or possession. When a word or phrase used by a speaker constitutes slang or

coded or intentionally vague language (or whose meaning would not be obvious to a layperson) I have provided my interpretation of those words and/or phrases in parentheses. My interpretations are based on my knowledge of and participation in this investigation and my discussions with SA Eckhart and with other experienced law enforcement personnel. My interpretations, however, may change as additional information is learned through the course of the investigation. Where noted, the intercepted communications were in Spanish and have been translated into English. Like the summaries themselves, however, these translations are preliminary and tentative. Subsequent review of the recorded conversations and preparation of verbatim translations and transcripts may show changes from the summaries provided and changes in the preliminary translations. This is particularly true when the speakers use vague or coded language or slang. The actual names of callers have been used where agents believe they have tentatively determined the identities of the callers, or where their voices are recognized by the monitoring personnel or reviewers. Finally, once I have identified the telephone number used by a given person in an intercepted conversation, I will not repeat that telephone number in my descriptions of subsequent intercepted conversations unless that person uses a telephone number different than the number he or she previously used. All times are approximate and all locations are in California unless otherwise noted.

### III. <u>PROBABLE CAUSE</u>

8.      The wiretap portion of the investigation into the drug-trafficking activities of Joseph Solice ABBATE and Ramon RUBIO has been ongoing since September 2010. Over the course of the investigation, Agents have identified RUBIO by comparing relevant surveillance observations with his California Department of Motor Vehicles (DMV) photograph. During the investigation, Agents also determined that an unidentified male, to whom RUBIO referred as "Juanito," delivered methamphetamine to RUBIO and to others on RUBIO's behalf. "Juanito" was arrested by law enforcement officers on April 15, 2011. At the time of his arrest, law enforcement officers identified "Juanito" as VILLALOBO; specifically, VILLALOBO's girlfriend or wife identified him as VILLALOBO, and VILLALOBO later confirmed his identity. VILLALOBO, RUBIO, and Mark Joseph BRUNO (discussed below) were identified as the users

of the below telephones through the interception of telephone calls made by each of them, and the surveillance conducted of the activities discussed during the intercepted telephone calls (i.e., BRUNO, VILLALOBO, and/or RUBIO were seen in the locations or participating in the activities referenced in the preceding telephone calls).

9. On April 1, 2011, at 10:54 a.m., a push-to-talk call was intercepted between VILLALOBO using IMSI 316010156974526 and RUBIO using (510) 815-5687 (subscribed to Miguel Saco, P.O. Box 54988, Irvine, California 92619) (Session 45). The call was in Spanish. According to a rough translation of the call, RUBIO asked VILLALOBO if he could go see "Pata." (Based upon other intercepted calls during this investigation, I believe that RUBIO refers to his customer, Mark Joseph BRUNO, as "Pata de Elefante" or "Elephant Foot.") RUBIO further asked VILLALOBO if he had "una uña" or two. VILLALOBO replied that he had one. I believe, based upon conversations with linguists working on the wiretap, and other law enforcement officers familiar with the Spanish language, and the use of this wording in the context of intercepted communications during this investigation, that "una uña" is a slang term for one pound of methamphetamine. According to the Spanish linguists, "una uña," literally translated, means "one nail." I believe that RUBIO arranged for VILLALOBO to deliver methamphetamine directly to BRUNO.

10. At 10:58 a.m., a call was intercepted between BRUNO using (925) 812-3005 (subscribed to Mike Ukno, 1412 Cross Street, Martinez, California) and RUBIO (Session 240). During the call, BRUNO stated: "I was ready." RUBIO replied: "Okay, let me call you and I'll let you know how soon."

11. At 10:59 a.m., a push-to-talk call was intercepted between VILLALOBO and RUBIO (Session 46). The call was in Spanish. According to a rough translation of the call, RUBIO asked VILLALOBO if he has a chance to go right now. VILLALOBO replied that he could go at 12:30 or so. RUBIO said that's fine.

12. At 11:01 a.m., a call was intercepted between BRUNO and RUBIO (Session 241). During the call RUBIO said: "I be there like uh twelve, twelve thirty, twelve twenty." BRUNO said: "Sounds great, thank you."

13.     According to the GPS tracker placed on a silver Dodge Durango bearing California License Plate 6NIU936 (registered to Humberto Lopez, 4200 Reimche Drive, Anitoch, California) (the Durango), at 12:22 p.m., the Durango was parked in the vicinity of 113 Cataline Drive, Antioch (the Cataline Location) (which, based upon other intercepted communications and surveillance observations is believed to be VILLALOBO's stash location). Based upon other surveillance observations throughout this case, VILLALOBO is known to drive the Durango. From 12:44 p.m. to 1:12 p.m., the GPS tracker indicated that the Durango drove from the vicinity of the Cataline Location to Estudillo Street south of Masonic Street, Martinez. (According to DMV records, BRUNO's address of record is 725 Masonic Street, Martinez (the "BRUNO Location").) At 12:57 p.m., a push-to-talk call was intercepted between VILLALOBO and RUBIO (Session 48). The call was in Spanish. According to a rough translation of the call, VILLALOBO told RUBIO to tell the third party that he will be there in about ten minutes. At 1:08 p.m., a call was intercepted between BRUNO and RUBIO (Session 244). During the call RUBIO said: "Like five minutes." BRUNO replied: "Alright. Thank you."

14.     From 12:26 p.m. to 1:03 p.m., on the same date, Agents observed BRUNO walk in and out of the BRUNO Location. (Identification of BRUNO was accomplished through comparison of surveillance observations with BRUNO's DMV photograph.) At 1:12 p.m., Agents observed VILLALOBO walk up to the front door of the BRUNO Location and ring the doorbell. The door opened and VILLALOBO walked inside. At 1:20 p.m., Agents observed VILLALOBO exit the BRUNO Location. VILLALOBO walked to the Durango, which was parked on Estudillo Street, and drove away.

15.     Later intercepted calls between VILLALOBO and RUBIO indicated that BRUNO was not happy with the quality of the methamphetamine. For example, a push-to-talk call was intercepted between VILLALOBO and RUBIO (Session 54) at 1:21 p.m. The call was in Spanish. According to a rough translation of the call, VILLALOBO told RUBIO that he told the third party that it was the last one, and the third party stated that he would rather wait for something different. At 3:55 p.m., a call was intercepted between BRUNO and RUBIO (Session 251). During the call, RUBIO said: "But right now, I got, just that one I think." BRUNO said:

1  "That's it?" RUBIO said: "Yeah." The two continued to discuss the quality of the
2  methamphetamine. Later during the call BRUNO said: "It's all good bro . . . yeah have 'em
3  send it my (unintelligible)."
4     16.   At 3:58 p.m., a push-to-talk call was intercepted between VILLALOBO and
5  RUBIO (Session 62). The call was in Spanish. According to a rough translation, RUBIO asked
6  VILLALOBO what the guy thought of the thing. VILLALOBO responded that he did not like it.
7  RUBIO told VILLALOBO to take it to him anyway because the guy has no alternative.
8  VILLALOBO stated that he would be at the guy's around 5:00 p.m.
9     17.   At 5:19 p.m., a push-to-talk call was intercepted between VILLALOBO and
10 RUBIO. The call was in Spanish. According to a rough translation, VILLALOBO stated that he
11 was there. RUBIO thanked him. At 5:22 p.m., Agents observed VILLALOBO enter the
12 BRUNO Location again.
13    18.   I believe that VILLALOBO showed BRUNO the methamphetamine, which he
14 obtained from the Cataline Location. I believe, however, that BRUNO did not purchase the
15 methamphetamine until VILLALOBO's second visit, as BRUNO was concerned about the
16 quality of the methamphetamine.

## IV. CONCLUSION

    19.   For the reasons stated above, I believe there is probable cause to believe that, on
or about April 1, 2011, Juan VILLALOBO knowingly and intentionally distributed a Schedule II
controlled substance, namely, a mixture and substance containing a detectable amount of
////
////
////
////
////
////
////
////

methamphetamine, in violation of 21 U.S.C. § 841(a)(1). I respectfully request that the Court issue the requested criminal complaint and arrest warrant.

_____
Patrick Joseph Ernst
Special Agent, Federal Bureau of Investigation

Sworn to before me this
___ day of April 2011.

_____
HONORABLE LAUREL BEELER
UNITED STATES MAGISTRATE JUDGE

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☒ COMPLAINT  ☐ INFORMATION  ☐ INDICTMENT  ☐ SUPERSEDING

---OFFENSE CHARGED---

21 U.S.C. § 841(a)(1), Distribution Of A Schedule II Controlled Substance (Methamphetamine)

☐ Petty
☐ Minor
☐ Misdemeanor
☒ Felony

PENALTY: See Attachment.

Name of District Court, and/or Judge/Magistrate Location

NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

FILED
APR 18 2011
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

---DEFENDANT - U.S---

▶ Juan VILLALOBO

DISTRICT COURT NUMBER

4-11-70427  MAG

---PROCEEDING---

Name of Complaintant Agency, or Person (& Title, if any)

FEDERAL BUREAU OF INVESTIGATION

☐ person is awaiting trial in another Federal or State Court, give name of court

✓ this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

☐ this is a reprosecution of charges previously dismissed which were dismissed on motion of:
☐ U.S. ATTORNEY  ☐ DEFENSE  } SHOW DOCKET NO.

☐ this prosecution relates to a pending case involving this same defendant

☐ prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

} MAGISTRATE CASE NO.

Name and Office of Person Furnishing Information on this form      MELINDA HAAG

☒ U.S. Attorney  ☐ Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)      JAMES C. MANN, AUSA

---DEFENDANT---

IS *NOT* IN CUSTODY
1) ☐ Has not been arrested, pending outcome this proceeding. If not detained give date any prior summons was served on above charges ▶
2) ☐ Is a Fugitive
3) ☐ Is on Bail or Release from (show District)

IS IN CUSTODY
4) ☒ On this charge
5) ☐ On another conviction
6) ☐ Awaiting trial on other charges  } ☐ Federal  ☐ State
If answer to (6) is "Yes", show name of institution

Has detainer been filed?  ☐ Yes  ☐ No  } If "Yes" give date filed

DATE OF ARREST ▶  Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED TO U.S. CUSTODY ▶  Month/Day/Year

☐ This report amends AO 257 previously submitted

---ADDITIONAL INFORMATION OR COMMENTS---

PROCESS:
☐ SUMMONS  ☐ NO PROCESS*  ☒ WARRANT      Bail Amount: NO BAIL

If Summons, complete following:
☐ Arraignment  ☐ Initial Appearance

Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:      Before Judge:

Comments:

## ATTACHMENT TO PENALTY SHEET

21 U.S.C. § 841(a)(1), Distribution Of A Schedule II Controlled Substance (Methamphetamine).

*Depending upon the weight and/or purity of the methamphetamine and whether an 851 Information alleging prior felony narcotics conviction is filed*:

| | | |
|---|---|---|
| (1) | Imprisonment: | Possible Maximum Life Imprisonment |
| | | Possible Mandatory Minimum 5, 10, or 20 Years Imprisonment |
| (2) | Fine: | Possible Maximum $8,000,000 |
| (3) | Supervised Release: | Possible Maximum Lifetime |
| | | Possible Mandatory Minimum 4, 5, 8, or 10-Years |
| (4) | Special Assessment: | $100.00 |